IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BAYLOR HEALTH CARE SYSTEM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:06-CV-1888-P |
| | § | |
| NATIONAL ELEVATOR INDUSTRY | § | |
| HEALTH BENEFIT PLAN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Now before the Court is Defendant National Elevator Industry Health Benefit Plan's ("NEI") Motion for Summary Judgment, filed on April 4, 2008. Plaintiff Baylor Heath Care System ("Baylor") filed a Response on April 24, 2008. Defendant filed its Reply on May 9, 2008, and Plaintiff filed its Sur-Reply on May 21, 2008. After reviewing the parties' briefing, the evidence, and the applicable law, the Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's claim for an attorneys' fees award. The Court will take up the rest of the issues presented in the parties' summary judgment motions at a later time.

**I. Background**

NEI is a self-funded and self-administered, multi-employer employee welfare benefit trust fund as those terms are defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Def.'s App. at 671 (McGowan Decl. ¶ 3).) Because it is self-funded, NEI is not an insurer or insurance company. (*Id.* ¶ 4.) NEI provides medical, disability and related benefits to employees throughout the United States working in the elevator

industry for employers signatory to collective bargaining agreements with Local Unions affiliated with the International Union of Elevator Constructors. (*Id*. ¶ 5.)

Private Healthcare Systems, Inc. ("PHCS") operates one of the largest proprietary preferred provider organization ("PPO") networks in the United States. Through its subscription contracts with insurance companies, employer health plans, managed care organizations and third party administrators (known as "subscribers") on one hand and its contracts with hospitals and physicians on the other hand, PHCS has created a health care network whereby the subscribers' individual members gain access to preferred providers' Hospital PPO Services at discounted rates.

Baylor is engaged in the business of providing hospital and related health care services. For many years, Baylor has provided health-care services in the Dallas/Fort Worth metropolitan area. Many of Baylor's patients have access to PHCS's preferred provider network.

In June of 1997, NEI entered into a contract, the Subscriber Services Agreement, with PHCS. (*Id*. at ¶ 22) One of the features of this contractual relationship was that NEI agreed to pay a fee to PHCS to obtain "PPO Services." (Pl.'s App. at 47, hereinafter "SSA".) The term "PPO Services" has a specific definition in Section 1.8 of the Subscriber Services Agreement. The definition in Section 1.8 refers to Exhibit C of the Subscriber Services Agreement. (SSA at 2.) Exhibit C, in turn, defines the term "PPO Services," as it pertains to hospitals, as the network of hospitals established by PHCS that agreed to accept discounted rates for their services "all as

defined in the PHCS form of Preferred Hospital Agreement."(SSA, Exhibit C – PPO Services, Section 1(a)(i) at 18.)

Pursuant to the Subscriber Services Agreement, NEI received financial incentives to encourage participants in the Plan to choose treatment from medical providers in the PHCS network of providers. Baylor became a part of the PHCS network of providers by signing a Hospital Services Agreement with PHCS. (Am. Compl. at 5; *see also* Hospital Services Agreement at 1, Am. Compl. App. Ex. 2.) Pursuant to this agreement, NEI gained access to discounted services provided by Baylor's hospitals and other health care services. (Pl.'s Mot. at 5; Def.'s Mot. at 5.)

In 2002, Baylor and PHCS negotiated a new agreement. (Def.'s App. 594 (Baylor Dep. 97).) The parties to that new agreement, PHCS and Baylor, termed the agreement as the "Hospital Services Agreement – PPO." (Def.'s App. 319.) At the heart of this case is a dispute over whether Defendant NEI is bound by the terms and conditions of the Hospital Services Agreement–PPO dated January 1, 2002 (the "2002 Hospital Services Agreement–PPO") between Baylor and PHCS. More specifically, NEI disputes that it is subject to the forty-five day prompt payment requirement in Section 4.4(a) of the 2002 Hospital Services Agreement–PPO.

Section 2.2 of the 2002 Hospital Services Agreement–PPO requires that PHCS enter into Payor Acknowledgments with its "Payors," including Baylor, for use of the PHCS provider network. The 2002 Hospital Services Agreement–PPO provides:

> PHCS represents and warrants that it has entered into Payor Acknowledgment with Payors for the use of the PHCS provider network. . . . Each Payor Acknowledgment between PHCS and a Payor will obligate the Payor (or its

designee) to comply with the duties and obligations of this Agreement, including, but not limited to, paying for Covered Services rendered to Members . . . .

(Pl.'s App. at 4.)

NEI's Motion for Summary Judgment requests that the Court find: (1) that the "prompt payment" terms in the 2002 Hospital Services Agreement–PPO cannot be applied to NEI because NEI never agreed to be bound to that agreement; (2) that even if the terms of the 2002 Hospital Services Agreement–PPO could be applied, the Section 4.4(a) requirements should not apply to NEI; (3) that the amount claimed by Baylor in this case is not a "Covered Service," and therefore NEI is not obligated to pay that amount; (4) that NEI paid twelve of the fifteen disputed claims within forty-five days of receipt; and (5) that Baylor is not entitled to attorney's fees. In this Order, the Court will limit its ruling to the issue of whether Baylor is entitled to an award of attorneys' fees in the event that Baylor succeeds on any of its claims.

## II.    Summary Judgment Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence. *Id.* However, all evidence and the reasonable inferences to be drawn therefrom must

be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). At this point, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *Id.* at 248-50; *Abbot v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

Further, the Court has no duty to search the record for triable issues. *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise matter in which the evidence supports his or her claim." *Id.* However, the Fifth Circuit admonishes that "[w]hen dealing with employment discrimination cases, which usually necessarily involve examining motive and intent . . . granting of summary judgment is especially questionable. In these cases 'summary judgment should be used cautiously and all procedural requirements given strict adherence . . . .'" *Hayden v. First Nat'l Bank*, 595 F.2d 994, 997 (5th Cir. 1979) (quoting *Lavin v. Illinois High Sch. Ass'n*, 527 F.2d 58, 61 (7th Cir. 1975)).

### III. Analysis

In the United States, parties are ordinarily required to bear their own attorney's fees; the prevailing party is not entitled to collect from the unsuccessful party. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 602 (2001) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). Under this "American Rule," courts follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Id*. (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). However, the Fifth Circuit has held that in diversity cases, like the one at issue here, state law governs the award of attorney's fees. *Mid-Continent Casualty Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 230 (5th Cir. 2000) (stating that for "diversity cases, attorney's fees awards, which are entrusted to the sound discretion of the trial court, are governed by state law.").

Section 38.001 of the Texas Civil Practice and Remedies Code does allow for the award of attorney's fees and it provides, in pertinent part, "A person may recover reasonable attorney's fees from an **individual or corporation**, in addition to the amount of a valid claim and costs, if the claim is for . . . (8) an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (8) (emphasis added). It is under this provision, Plaintiff claims that it is entitled to an attorney's fees award if it prevails in this suit. Specifically, Plaintiff argues that prior courts' interpretation of Tex. Rev. Civ. Stat. Ann. Art. 2226 (Vernon Supp. 1985)(repealed 1986), the predecessor of § 38.001, authorizes the recovery of attorney's fees for breach of contract against non-corporate business entities. Defendant, on the other hand, is arguing that "based on the plain terms of [§

38.001], it cannot be applied to award fees to Baylor in this case because [NEI] is not an 'individual human being' or a 'corporation'." (Pl.'s Mot. at 34.) The Court will now address the parties' arguments.

It is important to note at the outset that the wording in § 38.001 represents a change from the wording of Tex. Rev. Civ. Stat. Ann. Art. 2226 (Vernon Supp. 1985)(repealed 1986), the predecessor of § 38.001. The legislature repealed Art. 2226, codified the attorney's fee statute in § 38.001, and changed the wording used to specify the classifications of those entitled to recover attorney's fees, as well as those against whom attorney's fees can be recovered.

Pertinent to this case is the change in the wording which identifies those against whom attorney's fees can be recovered. The phrase "person or corporation" in Art. 2226 was changed to "individual or corporation" in § 38.001. Based on the reviser's notes to Section 38.001, the reason why the current statute does not retain the use of the term "person" in the reference to a party liable for fees is because the definition of the term "person" in the current Texas Code Construction Act is broader than how that same term was used in the repealed law. *Base-Seal, Inc. v. Jefferson County*, 901 S.W.2d 783, 786 (Tex. App.--Beaumont 1995, writ denied). According to the Texas Court of Appeals, in order to retain the more "restrictive meaning" from the original repealed version of the statute, "the legislature changed the terminology used to describe those liable for attorney's fees under § 38.001 from 'person or corporation' to 'individual or corporation.'" *Id*.

Notwithstanding the language of section 38.001, which expressly limits statutory liability for attorney's fees to individuals and corporations, the Texas Supreme Court and other appeals

courts have allowed recovery of attorney's fees from other types of business entities. *See, e.g.*, *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 547 (Tex.1998) (affirming award of statutory attorney's fees against a law firm partnership under Tex. Civ. Prac. & Rem. Code § 38.001); *see also Apache Corp. v. Dynegy Midstream Servs., Ltd. P'ship*, 214 S.W.3d 554 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (awarding attorney's fees against a limited liability company under Tex. Civ. Prac. & Rem. Code § 38.001); *see Carr v. Austin Forty*, 744 S.W.2d 267, 272 (Tex. App.-Austin 1987, no writ) (requiring limited partnership to pay attorney's fees under Tex. Civ. Prac. & Rem. Code § 38.001); *Carlyle Read Estate Ltd. P'ship-X v. Leibman*, 782 S.W.2d 230, 233 (Tex. App.-Houston [1st Dist.] 1989, no writ) (affirming award of attorney's fees against a limited partnership under Tex. Civ. Prac. & Rem. Code § 38.001). However, none of these cases address the issue of the recoverability of statutory attorney's fees from a defendant under the "individual or corporation" language because the issue was not presented on appeal. The one federal case that does discuss the recoverability of statutory attorney's fees from a defendant under the "individual or corporation" language of § 38.001 is *Ganz v. Lyons P'ship, L.P.*, 173 F.R.D. 173, 173-75 (N.D. Tex. 1997).

In *Ganz*, the Court concluded that partnerships are not included among the defined parties against whom a claim for attorney's fees may be made. *Id.* In summarizing the change in the wording from Art. 2226 to § 38.001, the Court reasoned that the natural and logical explanation is that the legislature, knowing that the Code Construction Act defined "person" to include "partnerships," among others, thereby intended to exclude those who by definition are not

"individuals" or "corporations." It excluded "partnerships." To now read "partnerships" back in would defy the ordinary expectation of the legislative act. *Id.* at 176.

Though the Court finds the reasoning in *Ganz* compelling, the Court cannot resolve this issue using the exact reasoning because, at the time *Ganz* was decided, the Texas Supreme Court had not dealt with this specific issue. The law is clear that federal courts, when interpreting state law, are bound to apply only the law as interpreted by the state's highest court. *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272, 274 (5th Cir. 1991). Here, it does not appear that the Texas Supreme Court has dealt with the precise issue of whether § 38.001 allows an attorneys' fees award against an unincorporated ERISA plan. When the state's highest court has not yet spoken on an issue, the federal court must determine how the highest court might rule. *F.D.I.C. v. Abraham*, 137 F.3d 264, 267-68 (5th Cir. 1998).

In determining how the Texas Supreme Court might rule on this issue, the Court finds *Fleming Foods of Tex., Inc., v. Rylander*, 6 S.W.3d 278, 283 (Tex. 1999), dispositive. The statutory issue raised in *Fleming Foods* involved a review of the former article 1.11A, the predecessor to the Tax Code section at issue in the case. The predecessor statute provided that only those paying tax directly to the state could request a refund. *Id*. Based on former article 1.11A, the comptroller promulgated rules that prohibited a request for refund to be filed by a taxpayer who had paid the tax through a vendor, requiring instead that such refund request be made directly to the vendor. Although the legislature stated that the promulgation of the Tax Code was for recodification purposes only and that no substantive changes were intended, as is the case here, the legislature did change the wording of the statute when it codified the provision

in the Tax Code; as revised, the statute no longer required direct payment to the state as a prerequisite to requesting a refund of sales tax. Thus, the court held that the current statute on its face clearly and unambiguously allows a taxpayer to file a refund claim with the comptroller even if the tax was originally collected through a vendor. Although the court of appeals had concluded that the doctrine of legislative acceptance supported the comptroller's interpretation, the Texas Supreme Court rejected this conclusion on the ground that there was a "substantial change in verbiage" when former article 1.11A(3) was codified in section 111.104 and also because the statute was not ambiguous. *Id*. at 282. Significantly, the court explained that

> citizens, lawyers who represent them, judges, and members of the Legislature should not be required to research the law that preceded every codification . . . . We must be able to accept and to rely upon the words written by the Legislature" if the words are clear and do not produce absurd results.

*Id*. at 285. The court noted that a review of prior law, legislative history, and the circumstances under which the current law was enacted cannot be used to construe an unambiguous statute to mean something other than what it plainly says. *Id*.

*Fleming Foods* must also be read in conjunction with *Energy Serv. Co. v. Superior Snubbing Servs., Inc*., 236 S.W.3d 190, 194 (Tex. 2007) and *United Servs. Auto. Ass'n v. Strayhorn*, 124 S.W.3d 722, 728 (Tex. App.--Austin 2003, pet. denied). *Energy Serv. Co.* stands for the proposition that the reasoning in *Fleming Foods* applies only to those circumstances where the statutory text "could not admit the limitation of the prior law." In addition, the court in *United Servs. Auto. Ass'n v. Strayhorn*, 124 S.W.3d 722, 728 (Tex. App.--Austin 2003, pet. denied), noted:

> When the current law reflects no substantial change from the language of the prior law, and therefore can be interpreted or construed as embodying the prior law, the *Fleming Foods* directives have no application.

Thus, as Plaintiff notes, a critical inquiry is whether a subsequent version of a statute can be interpreted consistently with the previous version. (Sur-Rep. at 6.)

Given the reasoning in *Fleming Foods, Energy Serv. Co.,* and *United Servs. Auto.,* the Court concludes that the Texas Supreme Court would most likely find that § 38.001 is an unambiguous statute and that the term "individual", in place of "person", does not support the prior judicial interpretation of Art. 2226. Similar to the reasoning in *Ganz*, the Court reasons that the Code Contruction Act defines "person" to include "other legal entities". It is undisputed that NEI is neither a corporation or partnership, and thus, can only be included in that classification of "other legal entities". Because the legislature removed the reference to "person" and replaced it with "individual", the Court finds that to now read "other legal entities" back in would defy the plain meaning of the statute.[1] For the foregoing reasons, the Court finds that the plain language of Section 38.001 of the Texas Civil Practices & Remedies Code is unambiguous and that an ERISA plan, like NEI, is not an "individual or corporation" under Section 38.001, and under *Fleming Foods*, the doctrine of legislative acceptance does not apply in this case.

Plaintiff contends that any reliance on *Flemming Foods* is misplaced for the following reasons: (1) NEI neglected to inform the Court that *Fleming Foods* was superseded by a statutory revision; (2) in *Fleming Foods*, Civil Practices & Remedies Code Chapter 38 was not at issue;

---

[1] *See Ganz v. Lyons P'ship, L.P.*, 173 F.R.D. 173, 175 (N.D. Tex. 1997) (defining "individual" as a "human being"); *see also Base-Seal, Inc. v. Jefferson County*, 901 S.W.2d 783, 786 (Tex. App.--Beaumont 1995, writ denied) (defining "individual" as a "human being").

and (3) the Texas Supreme Court in *Grapevine Excavation,* which was decided after *Fleming Foods*, analyzed pre-codification case authority to interpret Chapter 38. The Court does not agree with any of Plaintiff's contentions.

First, the fact that the statute at issue in *Fleming Foods* was amended in direct response to the analysis of the court supports this Court's ruling. Though the Court acknowledges that the legislative intent behind Section 38.001 may have been to allow an award of attorney's fees against all non-corporate business entities, it is not the courts' responsibility to express that intent through judicial interpretation if the statutory text does not support such an interpretation. If the legislature indeed intended to allow recovery of attorney's fees from non-corporate business entities, it can amend the statute to more clearly express this intent.

Secondly, although *Fleming Foods* concerned a different statute than the one at issue here, the issue in *Fleming Foods* is the same as the issue before this Court. Both *Fleming Foods* and this case involve statutes that were codified with express statements that no change in substantive law was intended. In each case, the codified statute included a change in wording that changes the meaning of the statute, and in each case the codified statute is unambiguous. As in *Fleming Foods*, this Court is faced with resolving the "difficult issue" of the effect to be given to "clear, unambiguous statutes that were drafted by the Legislative Council as part of the codification process but that depart from prior law." *Fleming Foods of Tex., Inc.,* 6 S.W.3d at 283. Thus the Court concludes that *Fleming Foods* determines the outcome in this case and so the Court finds Plaintiff's first two contentions without merit.

Finally, Plaintiff contends that because *Grapevine Excavation,* which was decided after *Fleming Foods*, followed pre-codification case authority to interpret Chapter 38, the Court in this case is also required to do the same. The Court disagrees with Plaintiff and finds that *Grapevine Excavation* is easily distinguishable from *Fleming Foods* and by no means limits the applicability of *Fleming Foods* to the case at hand. On certification from the United States Court of Appeals for the Fifth Circuit, the Texas Supreme Court in *Grapevine Excavation* applied the statutory construction rule that "once appellate courts construe a statute and the Legislature re-enacts or codifies that statute without substantial change," the court presumes "that the Legislature has adopted the judicial interpretation." *Grapevine Excavation, Inc. v. Md. Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000). The Court also determined that the stare decisis doctrine compelled it to follow long-standing judicial interpretation by appellate courts and the Texas Supreme Court in light of the Legislature's acceptance of that interpretation. This case is easily distinguished from *Fleming Foods*. Most importantly, codification of the statute in *Grapevine Excavation* did not result in a rewording of the statute that changed the statute's meaning, as happened in *Fleming Foods*. The argument before the Court in *Grapevine Excavation* was that the statute as written before and after codification, did not support the prior judicial interpretation of the statute. The Texas Supreme Court did not disagree with the argument. However, on the basis of legislative acceptance and stare decisis, the court concluded it should follow the long standing interpretation of the statute. In *Fleming Foods,* as in the case *sub judice*, clearly there was a change in the verbiage of the statute at issue that substantially changed the plain meaning interpretation of the

statute. Thus, the prior judicial interpretation of the repealed statute cannot overcome the clear, unambiguous, and plain meaning interpretation of the new statute.

**V.      Conclusion**

For the foregoing reasons, the Court GRANTS in PART Defendant's Motion for Summary Judgment with respect to Plaintiff's request for an award of attorneys' fees. The Court will take up the rest of the issues presented in the parties' summary judgment motions in a subsequent order.

**IT IS SO ORDERED.**

Signed this 2nd day of June 2008.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE